IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AMERITOX, LTD., § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:08-CV-1168-D |
| VS. § | |
| § | |
| AEGIS SCIENCES CORP., § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

The court must decide whether the denial of a motion to amend in an earlier-filed case pending in another federal court precludes the plaintiff from bringing this second suit asserting the claim that it was unable to bring in the first suit. Concluding under the bar against claim-splitting that plaintiffs are prohibited from prosecuting the claim in this court, the court grants defendant's motion to dismiss and dismisses this action with prejudice.

I

In June 2007 plaintiffs Ameritox, Ltd. and U.D. Testing, Inc. (collectively, "Ameritox") brought a two-count complaint for patent infringement against defendant Aegis Sciences Corp. ("Aegis") in the United States District Court for the Southern District of Florida. Aegis answered and counterclaimed, seeking declaratory judgments of non-infringement and patent invalidity, and asserting claims for commercial disparagement under the Lanham Act, 15 U.S.C. § 1125(a), injurious falsehood/unfair competition under Florida law, and violation of the Florida Deceptive and Unfair Trade

Practices Act ("FDUTPA"). The scheduling order in the Florida suit required that any amendments to the pleadings be made by December 21, 2007. Ameritox timely moved to amend its complaint to add claims for a violation of the FDUTPA, tortious interference with business relationship, fraudulent misrepresentation, and false marking. Over Aegis' objection, the Southern District of Florida permitted Ameritox to amend its complaint. In response, Aegis brought additional claims of patent misuse and sham litigation under the Sherman Anti-Trust Act.

On May 8, 2008 Ameritox sought leave to amend its complaint to dismiss its patent infringement claims without prejudice and to add a claim under the Lanham Act for false advertising, in violation of 15 U.S.C. § 1125(a). The Southern District of Florida denied the motion because, without showing good cause under Fed. R. Civ. P. 16(b), Ameritox filed it nearly five months after the deadline.

On July 9, 2008 (the same day the court rejected Ameritox's motion to amend), Ameritox filed this lawsuit, presenting the same Lanham Act claim against Aegis that the Southern District of Florida had denied Ameritox leave to file: a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a). In response, Aegis filed a motion in the Southern District of Florida seeking to enjoin Ameritox from litigating its Lanham Act claim in this court. That court denied Aegis' motion, reasoning, in relevant part:

> Under the facts of this case, [Aegis'] reliance on the first-filed rule is misplaced. By virtue of denying [Ameritox's] motion to amend [its] complaint, the Lanham Act claim was never before this Court. Therefore, this Court is not the first court to be presented with the Lanham Act claim. Furthermore, given that the Texas action only involves a Lanham Act claim, and does not involve any other claim currently pending before this Court, there is no overlapping issue. Lastly, the Court declines to adopt [Aegis'] novel theory, for which no legal authority has been provided, that this Court is empowered to enjoin a party from filing a lawsuit in another jurisdiction.

*Ameritox, Ltd. v. Aegis Servs. Corp.*, No. 07-80498-CIV-MARRA/JOHNSON, slip op. at 2-3 (S.D. Fla. Oct. 10, 2008) (footnote omitted).[1]

Aegis now moves to dismiss or stay[2] the instant suit. It maintains that Ameritox's action should be dismissed under the first-filed rule as an improper serial litigation of a claim that has been denied by a court of competent jurisdiction in a first-

---

[1] The caption of the Southern District of Florida's opinion and order shows the defendant as "Aegis Services Corp." rather than "Aegis Sciences Corp.," probably because the plaintiffs originally sued Aegis under that name, and (as is frequently done) the court retained the original case caption when it filed its opinion and order. At least as of plaintiffs' second amended complaint, however, they had corrected Aegis' name, identifying it as "Aegis Sciences Corp." Neither side disputes in the present case that the defendant in each case is the same party.

[2] Aegis originally moved to dismiss or transfer based on the first-to-file rule. In a supplemental motion, Aegis withdrew its alternative request to transfer, replacing it with an alternative request to stay, after the Southern District of Florida issued its October 10, 2008 opinion and order deferring to this court the question whether Ameritox's Texas action is barred.

filed action in the Southern District of Florida that substantially overlaps with the instant case. Ameritox counters that this suit is not barred because (1) the doctrine of res judicata does not apply, (2) the Southern District of Florida, which is the proper court to determine whether the first-filed rule applies, has held that the first-filed rule does not apply, and (3) there is a compelling public interest in permitting Ameritox to litigate this claim.

II

As an initial matter, the court agrees with Ameritox that the present action is not barred on the basis of res judicata (claim preclusion). "For *a prior judgment* to bar action on the basis of res judicata, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been *a final judgment on the merits* and the same cause of action must be involved in both cases." *Langston v. Ins. Co. of N. Am.*, 827 F.2d 1044, 1046 (5th Cir. 1987) (emphasis added). Here, as Aegis concedes, the Southern District of Florida's rejection of Ameritox's untimely Lanham Act claim asserted in the proposed second amendment has not yet become a final judgment on the merits because that case is still pending. *Cf., e.g., Integrated Techs. Ltd. v. BioChem Immunosystems (U.S.), Inc.*, 2 F.Supp.2d 97, 102 (D. Mass. 1998) (holding that if plaintiff sought, but was denied on timeliness grounds, leave to

assert claim in first case and then, *after the first case was over*, attempted to assert claim in separate lawsuit, claim would be barred by res judicata); *Nilsen v. City of Moss Point, Miss.*, 701 F.2d 556, 560, 563 (5th Cir. 1983) ("[R]es judicata . . . bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its *former adjudication*" and "theories which were the subject of an untimely motion to amend, filed in the earlier action, 'could have been brought' there.") (second emphasis added). Consequently, the doctrine of res judicata does not apply to bar the present action. *See Oxbow Energy, Inc. v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988) (holding that res judicata does not apply to claims rejected as untimely in first suit and subsequently brought in new action where the first suit is still pending).

III

The fact that res judicata does not bar Ameritox's suit does not mean, however, that the first-to-file rule is inapplicable or that this suit is not barred by the related rule against claim-splitting.

A

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*,

174 F.3d 599, 603 (5th Cir. 1999) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728 (5th Cir. 1985)). "The rule rests on principles of comity and sound judicial administration." *Id.* (citing *Save Power Ltd.,* 121 F.3d at 950; *W. Gulf Maritime Ass'n,* 751 F.2d at 728). "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Maritime Ass'n,* 751 F.2d at 729 (citations omitted). When faced with duplicative litigation, "[i]n addition to outright dismissal, it sometimes may be appropriate to transfer the action or to stay it. A stay may, for example, be appropriate to permit the court of first filing to rule on a motion to transfer." *Id.* at 729 n. 1.

"The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd.*, 121 F.3d at 950; *Cadle Co.*, 174 F.3d at 606 ("The 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated."). The Southern District of Florida, however, has deferred to this court the determination of whether this action can

proceed. *See Ameritox*, slip op. at 2-3. It concluded that it is not the "first court" in the first-to-file equation because it was not the first court presented with the Lanham Act claim. It also concluded that this court should determine whether res judicata prevents Ameritox from pursuing its Lanham Act claim. *Id.* at 3 n.1.

Ameritox contends that the first-to-file rule does not apply because the Southern District of Florida has already ruled that it was not the first court to be presented with the Lanham Act claim. Essentially, Ameritox tries to argue both that the Southern District of Florida *is* the first-filed court—and therefore should make the controlling ruling about whether the present case can continue—*and* that the Southern District of Florida *is not* the first-filed court—so that the first-to-file rule is inapplicable and does not preclude this case from proceeding. Ameritox cannot have it both ways. If the first-filed rule is inapplicable because, as the Southern District of Florida viewed the question, it was not the first court to be presented with the Lanham Act claim, then that court is not the proper tribunal to make the call regarding whether this lawsuit should proceed.

B

Ordinarily, this court, as the court where the second action was filed, would merely assess the potential overlap between the Southern District of Florida case and this suit. *See Cadle Co.*,

174 F.3d at 606 ("The district court [where the second action was filed] . . . properly limited its inquiry to the potential overlap between the two cases."). And if "[this court] found that 'the issues might substantially overlap, [generally] the proper course of action [would be]. . . to transfer the case to the [Southern District of Florida] to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Id.*

Two considerations, however, distinguish this case from the usual one in which the court would simply evaluate for potential substantial overlap and then transfer this case if such overlap were found. First, the Southern District of Florida has already denied Ameritox's Lanham Act claim as untimely; therefore, if this court were to determine that there is substantial overlap and then transfer this case, "this court would in effect have reversed [the Southern District of Florida's] decision to deny [Ameritox's] motion to amend." *Oxbow Energy*, 686 F. Supp. at 282. This is because, despite that court's prior decision denying leave to amend, the very claim that it refused to allow Ameritox to file would be pending before it in another lawsuit that substantially overlaps with the first case. *See id*. Second, the Southern District of Florida has already decided whether this case and the one before it substantially overlap. It held that because the lawsuit in this court "only involves a Lanham Act claim, and does

not involve any other claim currently pending before [the Southern District of Florida], *there is no overlapping issue.*" *Ameritox*, slip op. at 3 (emphasis added).

This court, then, is faced with a dilemma. The first-to-file rule is designed to prevent, *inter alia,* district courts from trenching on the authority of their sister courts, *see Cadle Co.*, 174 F.3d at 606, but it, at first blush, is unclear how such an outcome can be avoided here. If this court gives credence to the Southern District of Florida's determination that these lawsuits do not substantially overlap (indeed, do not overlap at all), and, on this basis, denies Aegis' motion to dismiss, then this court will impinge on the Southern District of Florida's authority to deny Ameritox's motion to amend. It will do so by permitting Ameritox to engage in an end-run around that court's denial of leave to amend, thereby avoiding the consequences of its delay. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000) (holding that where plaintiffs brought untimely claims in new action, it was not an abuse of discretion for district court to prevent plaintiffs from using new action to avoid the consequences of their delay); *Fawcett v. Ditkowsky*, 1992 WL 186065, at *3-*4 (N.D. Ill. July 27, 1992) (dismissing plaintiff's complaint as an "end-run around" Rule 15, which permits the amendment of a complaint at district court's discretion). On the other hand, if this court grants Aegis' motion to dismiss, it will effectively enforce the Southern District of

Florida's decision to deny leave to amend, but in doing so it will necessarily find, contra to that court, that *there is* substantial overlap between the two lawsuits.

C

The court need not resolve this dilemma, however, because it can dismiss Ameritox's suit under the rule against claim-splitting, thereby avoiding all the problems that would arise by applying the first-to-file rule and transferring the case to the Southern District of Florida.[3]  Although Aegis frames its argument for

---

[3]If the court were to apply the first-to-file rule, it would hold that the cases substantially overlap. "The [first-to-file] rule does not . . . require that cases be identical. The crucial inquiry is one of 'substantial overlap.'" *Save Power Ltd.*, 121 F.3d at 950 (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)).  In the Southern District of Florida case, Ameritox brings a false advertising claim against Aegis under the FDUTPA, alleging that "Aegis has, and continues to, misrepresent the quality and nature of its services and reports," and that its "misrepresentations are likely to mislead and deceive customers" into using Aegis' services instead of Ameritox.  D. App. 49.  In the present case, Ameritox asserts a false advertising claim against Aegis under the Lanham Act, alleging that Aegis made statements in commercial advertisements that "are literally false and/or likely to deceive customers about the true nature, characteristics, and qualities" of Aegis' services, and that "Aegis' false and/or misleading statements have already, and will continue, to influence purchasing decisions to the extent that customers choose Aegis' services instead of those offered by Ameritox."  Compl. ¶¶ 31 and 32.  Both the Southern District of Florida action and this case center on the question whether Aegis made misrepresentations about the nature and quality of its drug-testing service "PainComp" that have caused customers to choose Aegis' services over Ameritox's.  This question involves several component issues, most notably: (1) what representations did Aegis make to its customers regarding the nature and quality of its drug-testing service, (2) what was the actual nature and quality of its drug-testing service, and (3) did Aegis' representations cause customers to choose Aegis' services over Ameritox's.  Therefore,

dismissal in terms of the first-to-file rule and only briefly mentions the related rule against claim-splitting,[4] the rule against claim-splitting clearly supports dismissal.

"Claim-splitting occurs when a single 'cause of action' is split by advancing one part in an initial suit and another part in a later suit." *FDIC v. Nelson*, 19 F.3d 15, 1994 WL 93409, at *2 n.5 (5th Cir. Mar. 15, 1994) (per curiam) (unpublished table decision). Adopted by the Fifth Circuit in *Super Van Inc. v. City of San Antonio*, 92 F.3d 366 (5th Cir. 1996), the rule against claim

---

the issues raised by Ameritox in this action substantially overlap with those raised in the Southern District of Florida.

[4]Indeed, the first-to-file rule and the rule against claim-splitting are very similar in that they both rest on principles of comity and sound judicial administration. Both rules operate to avoid the waste of duplication, rulings that may trench upon the authority of sister courts, and piecemeal resolution of issues that call for a uniform result. The distinction between the first-to-file rule and the rule against claim-splitting, however, appears to be in what the rules emphasize. The first-to-file rule emphasizes that the court in which an action was first filed should decide what to do with subsequently-filed actions involving "substantially overlapping issues." Once the second court determines that issues *might* substantially overlap, it is up to the first-filed court to determine the *actual* overlap of issues and what should be done about it (i.e., whether the second action should be dismissed because it is identical to the first-filed action, consolidated because it is substantially similar, and so forth). The rule against claim-splitting, on the other hand, emphasizes a plaintiff's obligation to bring into one action any and all theories and grounds for relief that the plaintiff may have based on a single alleged wrong. These different emphases, in turn, suggest different thresholds for dismissal. Under the first-to-file rule, a claim may be dismissed if it *substantially overlaps* with issues raised in the first-filed action. Under the rule against claim-splitting, a claim may be dismissed if it arises out of the *same wrong* (or transaction) as the first-filed claim.

splitting

> prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action. In a claim splitting case, the second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim.

*Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 Fed. Appx. 256, 265 (4th Cir. 2008) (citations and internal quotations omitted); *Nelson,* 1994 WL 93409, at *2 n.5 (holding that Fifth Circuit applies the "same transaction" test to determine whether a single claim has been split). "A main purpose behind the rule . . . is to protect the defendant from being harassed by repetitive actions based on the same claim." *Super Van Inc.*, 92 F.3d at 371.

"In dealing with simultaneous actions on related theories, courts at times express principles of 'claim splitting' that are similar to claim preclusion, but that do not require a prior judgment." 18 Charles Alan Wright, et al., *Federal Practice and Procedure* § 4406, at 30 (Supp. 2008); *see, e.g., Sensormatic*, 273 Fed. Appx. at 265 (affirming dismissal based on claim-splitting even where there was no final judgment in earlier action); *Oxbow Energy,* 686 F. Supp. at 282 (holding that even absent a final judgment, a party cannot split claims); *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 987 n.1 (10th Cir. 2002) (noting that motion to dismiss based on claim-splitting often cannot wait until final judgment in first-filed action, and, therefore, appropriate inquiry in claim-splitting context is

whether, assuming first-filed suit were already final, second suit could be precluded pursuant to claim preclusion). "A dismissal on this [claim-splitting] ground has been viewed as a matter of docket management, reviewed for abuse of discretion, even in decisions that with some exaggeration describe the theory 'as an aspect of res judicata.'" 18 Wright, et al., *supra*, § 4406, at 30.

D

Because the false advertising claim that Ameritox asserts in this court involves one of the same plaintiffs and the same party-defendant, and arises out of the same transaction (the representations Aegis made to its customers regarding the nature and quality of its drug-testing services) as the false advertising claim that Ameritox asserts in the Southern District of Florida, this action is barred by the rule against claim-splitting. *See Sensormatic*, 273 Fed. Appx. at 265.

This conclusion is further supported by the fact that courts often apply the rule against claim-splitting "to prevent a plaintiff from filing a new lawsuit after the court in an earlier action has denied the plaintiff's request for leave to amend to add the claims later asserted in the second lawsuit." *See, e.g., id.* (affirming dismissal based on claim-splitting grounds where "[plaintiff] sought to circumvent the *Sensormatic I* court's decision to deny [plaintiff's] motion for leave to file an amended complaint" when it "asserted the same claim in a new lawsuit,

*Sensormatic II*, the day after the *Sensormatic I* court denied its motion for leave"); *Oxbow Energy*, 686 F. Supp. at 282 (dismissing, on claim-splitting grounds, claims brought in new action after earlier action denied plaintiff's untimely request to add the claims in an amended complaint); *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 362 (5th Cir. 1996) ("When a plaintiff files a second complaint alleging the same cause of action as a prior, pending, related action, the second complaint may be dismissed. This rule finds particular application where, as here, the plaintiff files the second complaint to achieve procedural advantage by 'circumventing the rules pertaining to the amendment of complaints.'"). On the same day Ameritox's motion for leave to amend was denied by the Southern District of Florida, it filed this action asserting the very same Lanham Act claim that it sought unsuccessfully to add in the Florida action. Therefore, because it is apparent that Ameritox, in filing the present lawsuit, sought to circumvent the Southern District of Florida's decision to deny its motion for leave to file an amended complaint, dismissal pursuant to the rule against claim-splitting is particularly appropriate here.

IV

Ameritox contends that it should be permitted to litigate its Lanham Act claims because allowing Aegis to continue its false advertising is dangerous to the public. The court disagrees.

The immediate cause of this is Ameritox's dilatoriness in seeking leave to amend in the Southern District of Florida. And the false advertising issue will be addressed in the Southern District of Florida. Therefore, even if Ameritox is precluded from litigating its Lanham Act claim, Ameritox will still be able to prevent Aegis from continuing its alleged misrepresentations, although it will have to do so via the FDUTPA, rather than the Lanham Act.

Moreover, if Ameritox still wants to pursue its Lanham Act claim after this action is dismissed, Ameritox will not be without recourse with respect to the case filed in the Southern District of Florida.

> The fact that [the Southern District of Florida] did not allow [Ameritox] to proceed on [its Lanham Act claim] is not a persuasive reason for granting [Ameritox] the right to proceed in a second action . . . . The proper course for [Ameritox] is to appeal [the Southern District of Florida's] ruling to the Circuit Court of Appeals once the [Florida action] is concluded.

*Oxbow Energy*, 686 F. Supp. at 282.

* * *

Accordingly, the court grants Aegis' September 25, 2008 motion to dismiss and dismisses this case with prejudice by judgment filed today.

**SO ORDERED.**

February 9, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE