```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION

AMERITOX, LTD.,                   §
                                  §
                  Plaintiff,      §
                                  § Civil Action No. 3:08-CV-1168-D
VS.                               §
                                  §
AEGIS SCIENCES CORP.,             §
                                  §
                  Defendant.      §
```

MEMORANDUM OPINION
AND ORDER

In this lawsuit that the court dismissed based on the rule against claim-splitting, defendant Aegis Sciences Corp. ("Aegis") moves for an award of attorney's fees under 15 U.S.C. § 1117(a).[1] Concluding that Aegis has failed to show by clear and convincing evidence that plaintiff Ameritox, Ltd. ("Ameritox") brought its Lanham Act-based false advertising claim in bad faith, the court denies the motion.

I

The background facts of this case are set out in the court's prior memorandum opinion and order and need not be repeated at length. *See Ameritox, Ltd. v. Aegis Scis. Corp.*, 2009 WL 305874, at *1-*2 (N.D. Tex. Feb. 9) (Fitzwater, C.J.) ("*Ameritox I*"), *appeal docketed*, No. 09-10244 (5th Cir. Mar. 16, 2009). The facts pertinent to this memorandum opinion and order are set out below.

---

[1] Aegis also cites Fed. R. Civ. P. 54(d), but the substantive basis for an award is found in 15 U.S.C. § 1117(a).

II

The Lanham Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The determination whether a case is exceptional is left to the sound discretion of the trial court. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996).[2]

To recover attorney's fees, the prevailing party must demonstrate the exceptional nature of the case by clear and convincing evidence. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 490 (5th Cir. 2004) (quoting *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002)). An exceptional case involves acts that can be called malicious, fraudulent, deliberate, or willful. *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distribution Co.*, 520 F.3d 393, 402 (5th Cir. 2008). To demonstrate that a case is exceptional, a prevailing defendant must show that the plaintiff brought the case in bad faith. *Scott Fetzer Co.*, 381 F.3d at 490 (citing cases). A district court should consider the objective merits of the suit in determining whether the plaintiff acted in bad faith. *Id.* (citing *Procter & Gamble Co.*, 280 F.3d at 527).

Ameritox does not dispute that Aegis is a "prevailing party"

---

[2]The Fifth Circuit reviews for abuse of discretion the district court's decision to award attorney's fees under the Lanham Act; it reviews for clear error the district court's findings as to whether the case is exceptional. *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 490 (5th Cir. 2004).

for purposes of § 1117(a).  Instead, Ameritox contends that Aegis has failed to demonstrate by clear and convincing evidence that the case is exceptional.

III

Aegis essentially argues that Ameritox acted in bad faith in filing its Lanham Act claim because Ameritox knew or should have known that doing so would violate the rule against claim-splitting. To support this argument, Aegis points primarily to two district court opinions and language in *Ameritox I* dismissing Ameritox's claim.  The cases Ameritox cites, however, are distinguishable, and *Ameritox I* neither determined nor suggested that, by filing its claim, Ameritox acted in bad faith.

Although in *Ameritox I* the court stated that the rule against claim-splitting "clearly" supported dismissal of Aegis' Lanham Act claim, *Ameritox I*, 2009 WL 305874, at *4, and that, by filing the Lanham Act claim on the same day its motion for leave to amend was denied by the Southern District of Florida, Ameritox apparently sought to circumvent that tribunal's decision, *id.* at *5, the court did not suggest or decide that Ameritox filed the claim in bad faith.  By bringing its Lanham Act claim before this court, Ameritox attempted to circumvent the Southern District of Florida's denial of Ameritox's motion to add the claim in the Florida action; nevertheless, Ameritox's belief that it could properly do so is "not so implausible as to necessitate an inference of bad faith."

- 3 -

*Robin Singh Educ. Servs. Inc. v. Excel Test Prep*, 291 Fed. Appx. 620, 622 (5th Cir. 2008) (holding that defendant did not produce clear and convincing evidence of "bad faith" where defendant asserted that plaintiff should have known its claim would be barred by collateral estoppel).

Although Aegis contends that Ameritox should have known that its Lanham Act claim would be barred by the rule against claim-splitting, Aegis apparently did not itself know that the claim would be barred on this basis. It moved to dismiss or stay Ameritox's claim under *the first-to-file rule*, not the rule against claim-splitting, which Aegis only briefly mentioned in its supplemental brief. *See Ameritox I*, 2009 WL 305874, at *4. And under the first-to-file rule, dismissal was not so obvious as to necessitate an inference of bad faith. Indeed, the Southern District of Florida did not think the first-to-file rule was even applicable. *See Ameritox, Ltd. v. Aegis Servs. Corp.,* No. 07-80498-CIV-MARRA/JOHNSON, slip op. at 2 (S.D. Fla. Oct. 10, 2008) (order denying Aegis' motion to enjoin Ameritox from litigating its Lanham Act claim in this court) ("Under the facts of this case, [Aegis'] reliance on the first-filed rule is misplaced. By virtue of denying [Ameritox's] motion to amend [its] complaint, the Lanham Act claim was never before this Court."). And this court noted in *Ameritox I* that the first-to-file rule presented a dilemma. *Ameritox I*, 2009 WL 305874, at *4 ("The first-to-file rule is

- 4 -

designed to prevent, *inter alia*, district courts from trenching on the authority of their sister courts, but it, at first blush, is unclear how such an outcome can be avoided here." (citation omitted)). Therefore, because the first-to-file rule did not obviously demand dismissal, and because Aegis itself did not know that Ameritox's claim was barred by the rule against claim-splitting, the court cannot find under a clear and convincing evidence standard that, through minimal legal research, Ameritox should have known that its claim was untenable and therefore that it acted in bad faith in asserting it.

Aegis maintains that Ameritox's pursuit of its Lanham Act claim "in light of the direct, legal authority emphasized by this Court affirming dismissal based on claim-splitting grounds under precisely the same circumstances" is "the type of evidence of bad faith that other courts have determined warrants recovery . . . of reasonable attorney's fees by the prevailing party defendant under the Lanham Act's 'exceptional case' standard." D. Reply 5. The court disagrees. Each of the cases Aegis cites is distinguishable because in each case the plaintiffs had *actual* knowledge of the case law that unequivocally rendered their claims untenable, and the court's bad-faith finding was not drawn solely from the case law that rendered those claims untenable. In *Contractual Obligation Productions, LLC v. AMC Networks, Inc.*, 546 F.Supp.2d 120 (S.D.N.Y. 2008), the court found exceptional circumstances

warranting an award of attorney's fees because "plaintiff's Lanham Act claim was completely lacking in legal merit *and . . . plaintiff had actual knowledge that its Lanham Act claim[ ] was baseless.*" *Id.* at 131 (emphasis added).  Specifically,

> [w]hen Judge Anderson denied plaintiff's motion for a preliminary injunction, he unequivocally put plaintiff on notice that . . . the protection plaintiff was claiming under the Lanham Act applied to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communications.  From that point forward, plaintiff knew that it had no basis for its Lanham Act claim, and plaintiff should have withdrawn that claim from its action against defendants.

*Id.* at 130.  The plaintiff, however, continued to pursue its trademark infringement claim under the Lanham Act, despite the fact that the claim was *twice more* held by *two different judges* to be foreclosed by Supreme Court precedent.  *Id.* at 124 (magistrate judge denied request to add new defendants because claim was foreclosed); *id.* (district judge granted summary judgment on Lanham Act claim because claim was foreclosed by same Supreme Court precedent on which magistrate judge relied).  The plaintiff nevertheless failed meaningfully to distinguish the Supreme Court precedent even in its opposition to the prevailing defendant's motion for attorney's fees.  *See id.* at 130.

Aegis cites *Vital Pharmaceuticals, Inc. v. American Body Building Products, LLC*, 510 F.Supp.2d 1043 (S.D. Fla. 2007), for noting, among other indicia of bad faith, that the plaintiff

pursued its trade dress claim in light of clear case law that suggested that it could not properly do so. The plaintiff in *Vital Pharmaceuticals*, however, like the plaintiff in *Contractual Obligation Productions*, had actual knowledge of the clear case law because the plaintiff cited it in its arguments.[3] Therefore, neither *Vital Pharmaceuticals* nor *Contractual Obligation Productions* found the plaintiff to have acted in bad faith on the basis that case law precluded the plaintiff's claim regardless whether the plaintiff was aware of the case law. In other words, the courts did not infer bad faith merely from the plaintiff's failure to research thoroughly its claims and uncover the legal authority that barred them, which is essentially what Aegis asks

---

[3]The court reasoned:

> Plaintiff's trade dress, aside from the functional element of vertical lettering, was nothing more than a bottle with a neck on it, a purely functional design [as noted by *Carillon Importers v. Frank Pesce Group,* 913 F.Supp. 1559, 1564 (S.D. Fla. 1996) ("In the Eleventh Circuit, a bottle with a neck on it would probably not constitute protected trade dress because a neck is a functional requirement on a bottle, or at least a competitive necessity.")]. In spite of this obvious problem, Plaintiff actually cited *Carillon* in support of its position [that its trade dress was primarily non-functional] . . . . Such misplaced reliance is additional evidence that Plaintiff had no legal basis to claim that its limited trade dress was somehow non-functional.

*Vital Pharms.*, 510 F.Supp.2d at 1050-51.

this court to do. In fact, the court in *Contractual Obligation Products* specifically noted:

> [t]here is no evidence . . . that plaintiff was aware of [the Supreme Court precedent] or its relevance before it filed its complaint and motion for a preliminary injunction and, thus, no evidence from which it can be inferred that plaintiff acted in bad faith prior to Judge Anderson's decision. Plaintiff is only liable, therefore, for the reasonable attorneys' fees incurred defending against plaintiff's Lanham Act claims after Judge Anderson's ruling.

*Contractual Obligation Prods.*, 546 F.Supp.2d at 131.

Here, because the court is unable to find, under a clear and convincing evidence standard, that, when Ameritox filed its complaint in this court, it was actually aware of the legal authority barring its suit based on claim-splitting, the court cannot find that Ameritox acted in bad faith.

\*   \*   \*

Accordingly, because Aegis has failed to demonstrate by clear and convincing evidence that Ameritox acted in bad faith in filing

its Lanham Act claim, Aegis has failed to show that this is an exceptional case warranting the award of attorney's fees under § 1117(a). Aegis' motion for attorney's fees is therefore denied.

**SO ORDERED.**

May 12, 2009.

                                _____
                                SIDNEY A. FITZWATER
                                CHIEF JUDGE